FILED
2018 Mar-23 PM 03:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ANGELIA MANCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 7:16-cv-01056-JEO |
| | ) |
| THE BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF WEST ALABAMA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

In her now-governing amended complaint, Plaintiff Angelia Mance claims that, while employed by the University of West Alabama, she was subjected to disability discrimination and retaliation in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Doc.[1] 26). The cause now comes to be heard on a motion for summary judgment filed by the Defendant, the University of West Alabama's Board of Trustees ("Board"). (Doc. 52). Upon consideration, the court[2] concludes that the Board's motion is due to be granted.

---

[1] References to "Doc(s). ___" are to the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of the Court. Unless otherwise noted, pinpoint citations are to the page of the electronically-filed document in the court's CM/ECF system, which may not correspond to pagination on the original "hard copy" of the document presented for filing.

[2] The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(b) and Rule 73, Fed. R. Civ. P. (Doc. 16).

## I. SUMMARY JUDGMENT STANDARDS

Pursuant to Rule 56, Fed. R. Civ. P., a party may move for summary judgment on all or some of the claims asserted against it. Under that rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has met that burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1)(A), (B), Fed. R. Civ. P. In its review of the record, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor. *Stewart*

*v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II. BACKGROUND[3]

In 2007, Mance was hired by Alabama Southern Community College ("ASCC") to serve as the Director of the Demopolis Higher Education Center ("DHEC"). The DHEC was formed pursuant to an educational partnership agreement between the City of Demopolis, Alabama (the "City") and local colleges and universities to promote economic development, job skills training, and dual enrollment for the City's residents. Under that arrangement, the DHEC was funded primarily by the City, and it owned the classroom and office building in Demopolis that served as the DHEC facility. On the college side, at the time of Mance's hire, ASCC was the managing partner of the DHEC, providing the personnel who worked at the DHEC facility and carried out the programs.

In 2009, the University of West Alabama ("UWA") entered into a five-year agreement with the City to replace ASCC as the managing partner of the DHEC. Under that agreement, UWA would essentially assume ASCC's functions,

---

[3] The factual summary recited in this section is gleaned from the evidence submitted on the motion for summary judgment. Consistent with the applicable standard of review, it sets forth the facts in the light most favorable to the non-movant. As such, these are the facts for purposes of the motion only and may not represent the actual facts of the case. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

providing personnel and management of all DHEC programs.  The City, in turn, would lease the DHEC facility to UWA for one dollar per year and furnish $92,500 in annual funding to help finance the DHEC's operations, including staff salaries.

On May 15, 2009, Mance was hired away from ASCC to work for UWA, where she initially served in the position of Director for the Center for Business and Economic Services ("CBES"), with the understanding that, once UWA assumed its duties as DHEC's managing partner, she would transition back to DHEC Director.  In late 2009, Mance was involved in an accident that later resulted in the amputation of her right leg, leaving her wheelchair-dependent.  After taking paid medical leave, she returned to work in March 2010.  On April 1, 2010, she took her former position as DHEC Director, as planned, and she continued to work in that same capacity over the next few years, into 2014.  During that period, Mance was also given two additional titles:  Associate Director of the CBES and Special Projects Coordinator for the Suttles Entrepreneurial Center.  Neither title, however, carried any pay or benefits independent of what Mance received as DHEC Director.  (*See* Doc. 52-6, Declaration of Ken Tucker ("Tucker Decl.") ¶ 5; Doc. 52-5 at 2-53, Deposition of Angelia Mance ("Mance Dep.") at 91, 107-08;  Doc. 52-3 at 2-10, Deposition of Ken Tucker ("Tucker Dep.") at 17; Doc. 52-5 at 321).

By its terms, the City's five-year agreement with UWA regarding the DHEC was to expire on September 30, 2014. As that date approached, there were doubts about whether the City would continue to fund its part of the DHEC budget. Even so, the City's funding for the DHEC was paid to UWA on a quarterly basis, with a final payment due on October 1, 2014, which would allow the DHEC to continue operating through the end of the semester in December 2014. On October 22, 2014, the City formally notified UWA that it would not renew its funding for the DHEC. UWA then decided to close the DHEC and lay off all five members of the DHEC staff, including Mance, effective at the end of the semester in December 2014. On November 5, 2014, Edwards met with Mance and informed her that her DHEC Director position was being eliminated and that UWA would be vacating the DHEC facility as of December 15, 2014. While none of the other four DHEC employees were retained in any capacity, UWA allowed Mance to continue teaching online courses as an adjunct professor, although she voluntarily ceased doing so in November 2014 due to having foot surgery. (Doc. 52-5 at 2-52 ("Mance Dep.") at 141).

At 10:53 a.m., on December 3, 2014, Mance emailed UWA President Blackwell "requesting a reasonable accommodation [of her disability] in the form of re-assignment and/or placement into a different position" because she was being removed from her "primary and only paying position." (Doc. 52-5 at 321).

5

Asking UWA to engage in a "good faith interaction" to determine whether she could be so "accommodated," Mance identified two "positions/duties" that she "believe[d]" were or soon would become available, namely the unpaid titles she had held along with her paid position as DHEC Director: (1) Associate Director of the CBES and (2) Special Projects Coordinator for the Suttles Institute. (*Id*.) There is no evidence in the record, however, that UWA ever recognized either title as a discrete, paid position, nor that UWA's workforce was expanded to cover duties associated with either title after UWA decided to eliminate the five DHEC positions. Indeed, the Board has proffered evidence that, months before the DHEC closed, UWA had already merged the Suttles Institute into the CBES to promote efficiency and extend the life of the Institute, which was funded by a donation. (Tucker Decl. ¶ 5). In the wake of that merger, CBES Director Veronica Triplett, an existing UWA employee hired before Mance, had assumed additional duties associated with the Suttles Institute, none of which were related to the DHEC. (*Id.* ¶ 6). And unlike Mance, Triplett worked on UWA's Livingston campus, and her salary was not dependent on funding from the City. (*Id.*) Finally, the Board has pointed to evidence that, because of budget constraints, UWA was not hiring as of December 2014 and had even been forced throughout that year to remove multiple postings for open faculty positions. (*Id.* ¶ 7).

Also on December 3, 2014, at 2:52 p.m., Mance sent an email to Edwards, advising that, given that she had less than two weeks left on the job and that "the state of [her] health [had] worsened," she was going to be applying for benefits under her employee long-term disability insurance policy. (Doc. 52-5 at 323). To that end, Mance requested that Edwards complete an attached statement form on behalf of UWA as her employer. (*Id*. at 323; *see also id.* at 324-27). Edwards acknowledged Mance's email and indicated he would help. The insurer subsequently approved Mance for disability benefits under the policy.

On or about December 22, 2014, Mance also applied for disability benefits with the Social Security Administration ("SSA"), citing the amputation of her right leg, lymphedema, diabetes, and lupus as the conditions that limited her ability to work. (Doc. 52-5 at 288, 304). In that application, Mance claimed that she had become disabled as of December 15, 2014, the day the DHEC closed. (*Id.*) In April 2015, the SSA notified Mance that it had approved her application for disability benefits based on her alleged onset date. (Doc. 52-5 at 297).

Mance, through retained counsel, filed this action in June 2016. (Doc. 1). She filed her latest amended complaint on October 14, 2016, asserting claims only against the Board, alleging unlawful disability discrimination and unlawful retaliation under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Doc. 26). On June 5, 2017, the Board filed a summary judgment (Doc. 52), with an

accompanying evidentiary submission. (Doc. 52-2 through 52-8). The parties have fully briefed the Board's motion (*see* Docs. 52-1, 57, and 58), which is now ripe for decision.[4]

## III. DISCUSSION

### A. Disability Discrimination

Section 504 of the Rehabilitation Act prohibits entities receiving federal funds from discriminating against otherwise qualified individuals with disabilities. 29 U.S.C. § 794(a).[5] The Board does not dispute that UWA receives federal funds and is thus subject to the Rehabilitation Act. Discrimination claims under § 504 are subject to the same standards of liability as claims brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, so cases interpreting the ADA are thus precedent for § 504 claims as well. *Cash v. Smith*, 231 F.3d 1301, 1305 & n. 2 (11th Cir. 2000).

"To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that (1) [s]he has a disability, (2) [s]he is otherwise qualified for the position, and (3) [s]he was subjected to unlawful discrimination as

---

[4] After the Board moved for summary judgment, Mance's counsel filed a suggestion noting on the record that Mance died on June 29, 2017. (Doc. 55). Plaintiff's counsel has since been attempting to substitute the representative of Mance's estate, *see* Rule 25(a), Fed. R. Civ. P., but that has proven problematic due to a prolonged dispute in the state probate court over the identity of the proper representative. (*See* Docs. 59, 62, 64, 66).

[5] Section 504(a) provides in relevant part: "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …." 29 U.S.C. § 794(a).

a result of his disability." *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (citing *Garrett v. University of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1310 (11th Cir. 2007)). One way for the plaintiff to establish the third element is to show, as Mance tries to do here, that the employer refused her request for a reasonable accommodation of her disability. *See id.* at 1289 (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)); *Frazier-White v. Gee*, 818 F.3d 1249, 1255-56 (11th Cir. 2016). In particular, Mance complains that UWA refused her request to "accommodate" her disability by reassigning her to either of two positions identified in an email she sent to UWA President Blackwell on December 3, 2014, after Mance had been notified that her position of DHEC Director was being eliminated.[6] (*See* Doc. 57 at 8-11). The Board argues that it is entitled to summary judgment on this claim because the evidence establishes that

---

[6]The court does not understand Mance to be now challenging UWA's antecedent decision to eliminate Mance's position as Director of the DHEC as an act of discrimination or retaliation in violation of the Rehabilitation Act. (*See* Doc. 57 at 8-11 (wherein Mance argues only that UWA discriminated by failing to reassign her to a different position after her DHEC job was eliminated; *id*. at 13 ("Mance suffered adverse employment actions when UWA (1) refused to accommodate her request to be considered for further employment; and (2) refused to engage in the interactive process.")). To the extent Mance might be seeking to recover based on the elimination of her DHEC position itself, however, the Board is entitled to summary judgment on any such claim. That is so because record establishes without genuine dispute that UWA eliminated Mance's post, along with the positions of all four other UWA employees assigned to the DHEC facility, for a lawful reason, namely, financial constraints stemming from the City's decision to pull its funding for the DHEC. *See, e.g., Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995) (holding that a reduction-in-force based on budgetary constraints was a legitimate, non-discriminatory reason for the plaintiff's termination). The court further recognizes that, in her Amended Complaint, Mance also asserted discrimination claims based upon UWA's alleged failure to provide wheelchair-accessible facilities. (Doc. 26, Amended Complaint, ¶ 29). However, Mance has made clear that she has withdrawn or abandoned such discrimination claims (Doc. 43), and she does not argue them in her brief in opposition to the Board's motion for summary judgment. (*See* Doc. 57).

9

neither job Mance named in her email, Associate Director of the CBES or Special Projects Coordinator for the Suttles Entrepreneurial Center, was an actual, vacant position, and UWA did not have to create a new position for Mance. The court agrees.

The Rehabilitation Act does not require employers to afford "preferential treatment" to the disabled when it comes to job reassignments or filling vacancies. *EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1345 (11th Cir. 2016) (so interpreting the ADA); *see also Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir. 1998) ("We cannot accept that Congress, in enacting the ADA, intended to grant preferential treatment for disabled workers."); *Quick v. Tripp, Scott, Conklin & Smith, P.A.*, 43 F. Supp. 2d 1357, 1369 (S.D. Fla. 1999); *cf. U.S. Airways v. Barnett*, 535 U.S. 391, 403 (2002) (recognizing that, under the ADA, it will "ordinarily," "in the run of cases," be unreasonable for a disabled employee to demand an accommodation in the form of reassignment to a vacant position that would otherwise go to another worker pursuant to an established seniority system). While reassignment of a disabled employee "may" be a reasonable accommodation in some circumstances, federal anti-discrimination law "does not say or imply that reassignment is always reasonable." *St. Joseph's Hosp., Inc.*, 842 F.3d at 1345. To the contrary, and especially relevant here, the Eleventh Circuit has recognized that "[r[eassignment to another position is a required accommodation only if there

is a vacant position available for which the employee is otherwise qualified." *Boyle*, 866 F.3d at 1289 (quoting *Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997)); *see also* 42 U.S.C. § 12111(9)(B) (ADA provision recognizing that the "term 'reasonable accommodation' may include … reassignment to a *vacant* position" (emphasis added)). As such, the "Rehabilitation Act does not require employers to create new positions for employees with disabilities." *Boyle*, 866 F.3d at 1289 (citing *Sutton v. Lader*, 185 F.3d 1203, 1210-11 (11th Cir. 1999)); *see also Frazier-White*, 818 F.3d at 1256; *Terrell*, 132 F.3d at 625-26; *Spears v. Creel*, 607 F. App'x 943, 948 (11th Cir. 2015). Nor is an employer "required to promote the disabled employee or remove another employee from a position in order to accommodate the disabled employee." *Boyle*, 866 F.3d at 1289 (citing *Lucas*, 257 F.3d at 1256).

Mance's discrimination claim is a textbook example of a plaintiff asserting that her disability affords her a right of preferential treatment over non-disabled employees when the employer imposes a lawful reduction-in-force. The Rehabilitation Act, however, does not call for "the non-disabled … being discriminated against-on the most basic of employment issues, that is, do you have a job at all, in favor of the disabled." *Terrell*, 132 F.3d at 627 (interpreting the ADA). Here, the evidence establishes that UWA eliminated all five DHEC positions, including Mance's, because the City discontinued its funding of the

program. It is also undisputed that UWA did not retain any of the other four affected employees. Mance claims, however, that, because she was disabled, UWA was bound to "accommodate" her through reassignment to either of two positions identified in her email to Blackwell on December 3, 2014: (1) Associate Director of the CBES or (2) Special Projects Coordinator for the Suttles Entrepreneurial Center. To be sure, to the extent either job actually existed and was vacant, UWA could not, because of Mance's disability, lawfully refuse her request to be considered as a candidate, provided that she was otherwise qualified, with or without a reasonable accommodation. The problem for Mance is that there is nothing in the record to support that either position was an existing, paid, and vacant job at UWA, despite any speculative beliefs to the contrary on Mance's part. Rather, the evidence reveals (1) that the two purported "positions" Mance cited did not exist except in the form of unpaid titles she had held in addition to her paid position as DHEC Director and (2) that any duties associated with the two titles were ultimately assumed by one or more other, existing UWA employees. Indeed, Mance does not seriously dispute this. Instead, she offers that, without enduring "significant difficulty or expense," UWA could have carved out an position "to accommodate" her either by "modif[ying] … the CBES position" held by another employee, Veronica Triplett, or by "creat[ing] a position" within the Suttles Institute. (Doc. 57 at 10-11). It is clear, however, that federal anti-

discrimination law does not require an employer to create a new position, either out of whole cloth or by shuffling around other employees or their duties, as a reasonable accommodation for a disabled worker who is otherwise lawfully subject to termination. *See Boyle*, 866 F.3d at 1289-90; *Frazier-White*, 818 F.3d at 1256; *Lucas*, 257 F.3d at 1256; *Sutton*, 185 F.3d at 1210-11; *Terrell*, 132 F.3d at 625-27; *Willis*, 108 F.3d at 284. The Board is thus entitled to summary judgment on this claim.

Mance also says that the Board is liable for disability discrimination based on the theory that UWA breached a duty " 'to engage in an "interactive process" with the disabled employee to determine whether and which reasonable accommodations are feasible.' " (Doc. 57 at 11 (quoting *Crutcher v. Mobile Housing Board*, 2005 WL 2675207, *12 (S.D. Ala. Oct. 20, 2005); *see also id.* at 13 ("Mance suffered [an] adverse employment action[ ] when UWA … refused to engage in the interactive process.")). It is true that ADA regulations provide that, "[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). Even so, if the plaintiff fails to meet her burden in the context of the litigation to identify a reasonable accommodation that could have actually been had, the employer cannot be liable based upon a mere procedural failure to engage in an interactive process

13

or otherwise investigate potential means of accommodation. *See Frazier-White*, 818 F.3d at 1257-58; *Willis*, 108 F.3d at 285; *Everett v. Grady Mem'l Hosp. Corp.*, 703 F. App'x 938, 946 (11th Cir. 2017); *Spears*, 607 F. App'x at 950; *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 682 (11th Cir. 2010). As explained above, Mance has not identified a reasonable accommodation, insofar there was no vacant position for her to assume when her job was lawfully eliminated, and UWA was not required to create a new one for her, disabled or not. Therefore, the Board is entitled to summary judgment on this claim, even assuming *arguendo* that UWA did not engage Mance in an "interactive process" over ways to accommodate her.

### B. Unlawful Retaliation

Under its § 504(d), 29 U.S.C. § 794(d), the Rehabilitation Act also incorporates the ADA's anti-retaliation provision, which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under the [ADA]." 42 U.S.C. § 12203(a); *Banim v. Florida Dep't of Bus. & Prof'l Regulation*, 689 F. App'x 633, 636 (11th Cir. 2017). To establish a prima facie case of retaliation, the plaintiff may show that (1) he engaged in a statutorily protected expression, (2) he suffered an adverse action, and (3) there was a causal link between the adverse action and his protected expression. *Banim*, 689 F. App'x at 636 (citing *Lucas*, 257 F.3d at 1260-61).

On her retaliation cause of action, Mance maintains that UWA subjected her to adverse action because she made multiple complaints about disability discrimination, including a lack of wheelchair access to parts of the DHEC facility and buildings on UWA's Livingston campus, starting as early as 2011. (*See* Doc. 57 at 12-13). In particular, she says she "suffered adverse employment actions when UWA (1) refused to accommodate her request to be considered for further employment; and (2) refused to engage in the interactive process." (Id. at 13). However, those same would-be adverse actions form the basis her discrimination claims alleging a failure to accommodate her disability. The court has already held that the Board is entitled to summary judgment on those claims, and they fare no better in the guise of a retaliation cause of action. *See Lucas*, 257 F.3d at 1261; *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1288 (11th Cir. 1997); *Santacrose v. CSX Transp., Inc.*, 288 F. App'x 655, 657-58 (11th Cir. 2008). Accordingly, even if Mance's complaints amounted to protected activity, the Board's motion is due to be granted in relation to her retaliation claims.[7]

## IV. CONCLUSION

Based on the foregoing, the Board's motion for summary judgment (Doc. 52) is due to be **GRANTED**. A separate Final Order will be entered.

---

[7] Because the Board is entitled to summary judgment on all of Mance's claims for the reasons discussed in the text, the court will not discuss the Board's further argument that Mance's claims also fail because that she successfully applied for disability benefits under the Social Security Act. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999).

**DONE**, this the 23rd day of March, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge